We're here today for telephonic oral argument in two cases that have been combined for purpose of oral argument. Those are 19-2812 Diamond v. PA State Education Association in 1939-06, Wenzig v. SEIU Local 668. Since we're proceeding telephonically, we don't have all of the information, including the lights that indicate green, yellow, and red. I will be keeping track of time on my phone, and there will be a buzz that you might hear in the background. Then when you hit time, you will have the ability to finish your response within reason, and then we'll poll the panel to see if there's any additional questions. With that, I understand from the oral argument sheets that I have before me that Mr. Kelsey for appellants will lead and speak for eight minutes. If that's correct, Mr. Kelsey, the floor is yours. Thank you very much, Your Honors, and good afternoon. I'm Brian Kelsey on behalf of plaintiff appellants Janine Wenzig and Catherine Kusis. May it please the Court. The defendant's argument in this case really boils down to one word, and that one word is fairness. They claim that it's not fair to hold a private party liable for following a state statute that was valid under the Supreme Court decision at that time. But instead, the plaintiffs respectfully ask this Court to look first not to equity, but to the law, and the law is clear that unless a 1983 claim is one requiring a showing of malice or a lack of probable cause, there is no such thing as a good faith defense against a private party. It simply does not exist, and we ask the Court not to create it in this case. Section 1983 is clear that it applies to every person who under color of state law denies a constitutional right, and it's designed to go after state officials who are following state laws to violate federal constitutional rights. To then turn around and use that defense that, oh, well, I was following a state law to deny liability is to turn what was an element of the statute acting under color of state law instead into a defense, and a court cannot rewrite a federal statute like that. In the opinion of the Court in the Wyatt v. Cole case, the Supreme Court rejected an equity argument that was very similar to the one made here today. The Court said that fairness to a private party who was following a valid state statute might lead one to give, in that case, what was immunity to the private party, but instead the equity argument. This Court, of course, also addressed this particular issue in the Jordan case, and there, in the Jordan case, it does allow for a good faith defense in limited circumstances, and that is to defend against claims of malice or lack of probable cause. The Jordan case says very specifically that the Supreme Court has read into Section 1983 a, quote, state of mind requirement specific to the particular federal right underlying a Section 1983 claim. The particular federal right underlying the claim in this case is free speech, and free speech violations do not require specific intent. Under Janus, there is no state of mind requirement to establish the constitutional violation. The very act of taking agency fees from workers against their will makes it a violation of the First Amendment. It doesn't matter whether the union is acting with malice or lack of probable cause. Therefore, the holding in Jordan. What do we do with Jordan? Your Honor, Jordan is distinguishable on that particular point. The Jordan case is very clear. You've got to follow the state of mind requirement specific to that particular federal right. In that case, the claim was one of abuse in the judicial process. Of course, it was a law firm who was executing the judgment with a garnishment against a tenant's bank account. There, the court said, in that particular instance, you can raise the issue of good faith because the claim was one for abuse of judicial process. In this particular case, however, the claim is a free speech claim. In the Janus case, it's clear that there is no mens rea requirement for that violation. Once these agency fees were taken, that violation has occurred. Even if Jordan doesn't apply, might there not have been some other defenses to civil liability and common law in 1871? Well, Your Honor, we actually agree with the Seventh Circuit in its most recent Janus decision in this case where the Seventh Circuit said there is no common law history before 1871 of private parties enjoying a good faith defense to constitutional claims. Now, on the particular question of the cases that were brought up to the parties prior to this oral argument, first of all, thank you very much for providing those ahead of time. We actually believe that supplemental briefing on this question is appropriate, and we'd be happy to address that. In all of these pre-1871 cases, they state that when taxes and government fees are taken involuntarily, as is the case here, then they are to be recouped. So despite that old line about nothing being certain in life but death and taxes, the reality is that taxes are not certain. You have to take an affirmative action to pay your taxes. They're not just taken from you. You file your tax return, you pay your taxes. But in this case, the unconstitutional agency fees were simply taken from my clients. There's nothing voluntary about them having to pay this money to deduct money from their paychecks. In those cases suggested to you, don't they also include the element of duress and protest and ransom and things of that nature, as opposed to mere payment pursuant to then existing law? Well, I think, Your Honor, the particular instances that they bring up where they do allow for the recoupment of the fees is they say that it's when the tax collector has authority to, as it says in the Town Council of Cahaba v. Vernon, authority to impose a lien or a warrant. And also other cases talk about imposing the fear of taking away one's liberty. But in this case, of course, that is the involuntary nature of my client's claims are very clear. And here's what the Collective Bargaining Agreement says. It has a line in there that says, quote, authorization from nonmembers to deduct fair share fees shall not be required. So they did not authorize this in any way, shape, or form like the taxes where the individuals actually went and paid the liver fee in the Town Council of Cahaba. Also, Baltimore v. Lefferman case and Taylor v. Board of Health. In both of those cases, the court specifically used the word that the payments were voluntary. And then, of course, in the other two cases, Kenyon v. Welty and Lyon v. Brockway and Richmond, in those two cases, the payments were certainly voluntary because those were contract cases. And in those cases, the courts refused to undo the contracts because of the mutual mistake of law defense because they said that those contracts had been entered into voluntarily. That is a different situation from this one in which my client simply had their money taken from them directly out of their paychecks with no authorization whatsoever. The other issue that is applicable to this particular case is the issue of retroactivity. And in the Harper case back in 1993, the U.S. Supreme Court held that its decisions in civil cases were presumptively retroactive unless the court specifically stated otherwise. And nothing in the Janus case did specifically state otherwise. And then following that, two years later in the court specifically held that courts cannot create an equitable remedy based on reliance on a statute before that statute was held unconstitutional. In that case, it was a statute of limitations. In this case, of course, it's the Pennsylvania agency fee law. But the remedy that is sought is exactly the same, which is one of, well, you relied on the old law. And even though we now know that law is unconstitutional, you just can't apply it to us based on principles of equity. But even if you look at principles of equity, they still fall in favor of my clients. First of all, my clients are entitled to a legal remedy under the statute, so there should not be an appeal to equity. But even if you do, fairness cuts both ways. And the stronger argument is decided that victims of the constitutional deprivation and not make them pay for the SEIU's unconstitutional conduct. A few thousand dollars might mean a lot more at this time to the victims than to the huge union. As the Owen Court has stated, elemental notions of fairness dictate that one who causes the loss should be the one to bear the loss. All right. Okay, counsel, you are at time. Are there any questions from any of the panel members? No. Okay. We'll turn it over to also counsel for our appellants. I understand, Mr. Mitchell, you will speak for eight minutes now. Yes. Thank you, your honors. And I'd like to reserve four minutes for rebuttal. Okay. Yep. That works. May it please the court. Properties that has been taken in violation of another's constitutional rights must be returned, even if the defendant took the property in good faith, and even if the defendant took the property in reliance on a statute or court ruling that purported to authorize its unconstitutional conduct. This court can assume the existence of a good faith defense under Section 1983, and it can assume for the sake of argument that private parties can assert a defense that resembles qualified immunity, consistent with the ruling from this court and from other courts that recognize a good faith defense for private defendants in Section 1983 litigation. But none of that is any help to the union, because neither qualified immunity nor good faith will ever permit a defendant to keep money or property that it took in violation of another's constitutional rights. Good faith can shield a defendant from liability for damages, but it cannot allow a defendant to escape a restitutionary remedy. In no area of the law will a defendant's good faith ever allow it to keep money or property that it took from a plaintiff in violation of the notion of restitution. And it strikes me that maybe the fairest reading, at least the most balanced, it might not be the correct reading from your perspective, but at least the most balanced reading is that restitution really straddles the line between law and equity. Sometimes restitution is truly legal in its nature, and other times it may be a bit in tension with the Wenzig appellants, which is that you're premising this on our equitable theory of restitution, not a damages theory, and they aren't. But if it is equity, and if we look only at equity, wouldn't you be limited to only those equitable components of the unjust enrichment component of remedy? Your Honor, you're right to point out that restitution can be damages, it can be equity, and courts have used restitution... I don't know. Yeah, yeah. It can be money. I don't know if it can be damages. It can be money measured by a plaintiff's illegal gain as opposed to the harm to the defendant. Right. And sometimes that's characterized as a legal remedy. The court decisions aren't entirely consistent on the question. I just would first push back gently against the premise of Your Honor's question. We don't have to take the remedy in order to prevail. The claim for us is that this is a restitutionary remedy. Regardless of whether we call it legal or equitable, our clients still are entitled to a refund. One reason that we believe we should prevail is because if this is equitable, the courts have consistently said that equitable remedies are outside the scope of a good faith defense. But I want to make clear to the court, our argument and the success of the outcome that we're asking for is not in any way dependent on the characterization that that's an equitable remedy. Now, to answer Your Honor's question, if the court regards this as an equitable claim, are we limited to a constructive trust? We believe that we can impose a constructive trust because the union is not contending in any way that the And to impose an equitable trust, we don't need to trace the exact dollars that were put into the union's treasury. All we have to show is that money was placed into the union's treasury from our client's paychecks. And money remains in the treasury sufficient to pay back our client. That's enough to impose an equitable trust. It doesn't become a legal remedy for damages unless the amount of money in the overall union treasury is insufficient to pay the plaintiffs, in which case it's no longer an equitable or constructive trust. And then it becomes just a normal legal claim for damages. So I don't believe that should be a problem in any respect, as long as the court agrees with our characterization of this as restitution. And I think for the union to prevail, they have to show that what we're seeking is not something akin to restitution, but something more akin to either punitive damages or damages for the collateral harms that the union may have inflicted on our client, such as claims for emotional distress. If we look at the cases that have the union can identify that have allowed a defendant to keep the property or keep the money that was taken in admitted good faith, but in violation of the plaintiff's constitutional rights. In every other situation, there may be a good faith defense for the defendant, but the money still has to be returned. The property still has to be returned. One of the best examples of this is the United States against Windsor, where the IRS collected taxes in good faith reliance on the Defense of Marriage Act, which was the statute that existed at the time. But Councilor, I don't want to push back on your Windsor example, but I mean, Windsor's two orders removed, right? Windsor's not a 1983 claim, it's a tax refund statute claim. And then there's no good faith defense recognized to the tax refund statute. So here we've got a 1983 claim with a good faith defense. Windsor, you've got a tax refund act statute with no good defense. So we're two orders removed. And so to say that Windsor stands for some radically deeper principle, it may, but that doesn't prevent 1983 and or a potential good faith defense from interrupting that application, that principle here. But the principle that Windsor establishes, and you're correct, it wasn't a 1983 case, these were federal officials. But if one were to imagine that Ms. Windsor had brought a Bivens claim against the IRS agent who collected the taxes from her and sought damages for emotional distress, the IRS agent absolutely should have a good faith defense, or we would probably call that qualified immunity in the Bivens context, because they acted in reasonable reliance on the Defense of Marriage Act. We admit that. I think the union would certainly agree that that's part of the union's good faith defense that would carry over to government officials. But the recognition of that defense to the individual officers who acted in reliance on the statute does not in any way signify that the government can keep the money that it took in violation of our constitutional rights, even though it was taken in good faith. So let me just follow up on that point, because it seems to me that really what you're doing is you're basically saying this good faith defense has some degree of temporal component to it, in the sense of even if the acquisition, I don't want to say taking because we'll think taking clause, but even if the acquisition itself may have been steeped in good faith at the time, the continued retention afterwards may no longer be steeped in good faith. And then so for a period, what you're saying, probably the statute of limitations period, you're saying, well that continued retention, even if there was a good faith statute, the elements wouldn't be met because the retention can't be justified for that period of time. I think that's one way. Yeah, I'm sorry, go ahead. No, no. So I guess my thought is really what you're asking us to do is look at good faith at two points in time, not just the acquisition, but the continued retention for a duration afterwards. Has anyone ever kind of carved up the good faith defense that way before? I never thought of it in the way that the temporal issue where there's good faith before the statute is declared unconstitutional and there's no longer good faith afterward because now you're retaining the money. And I haven't seen a court adopt that rationale either by trying to characterize temporal issues. And in all candor, that's not the way I thought of it when I made this argument. But I think what your Honor said fits with what we are saying, which is to say that you have a reasonable reliance on a statute, which protects you from a damages remedy, which protects you from having to pay out money for collateral harms that were inflicted. But nobody gets a windfall for violating the Constitution in good faith. You don't get to keep the money or property that you took. If you search Congressman Jefferson's office and reliance on a search warrant that's later declared unconstitutional, you get qualified immunity, meaning that Congressman Jefferson can't sue you for damages for whatever collateral harms might have been inflicted. So you're at time. Let me see if there's any other panelists. Director Rendell or Director Fischer, do you have any questions for Mr. Mitchell? Mitchell, let me ask you this question. In your briefing, you argue strenuously that property taken in violation of another's constitutional rights must be returned, even if it's taken in good faith, as you've reiterated here this afternoon. Yet, at least from your brief, all the cases you rely upon are mid-20th century and after. So I'd like to know, can you point to any cases prior to 1871 that support the principle that you assert here? The cases which predate 1983 would be the common law, where conversion is considered a strict liability tort. If somebody walks off with another person's property in good faith, but it turns out they took the person's property innocently, they have to return the property. And good faith has never been a defense to the tort of conversion. And it has never been a defense to any type of inadvertent taking of another's property. Now, good faith will protect you from punitive damages or any other type of damages that might have been inflicted by the innocent taking. So if I walk off with my opposing counsel's wallet in good faith at the end of oral argument, I have to return the money. Yeah, but doesn't the doctrine of conversion, you tried to analyze that, doesn't the doctrine of conversion apply to chattel and not money? Oh, I believe if I walk off with my colleague's wallet and there's money inside, I have to either return the chattel or pay the fair market. But that's different than what happened here. Voluntary payments were made pursuant to statute. I don't agree that this was a voluntary payment, Your Honor. I mean, and Mr. Kelsey said this as well, and I think he's right. Well, you didn't, were any actions taken prior to Janus? The money was taken from our client's paychecks automatically. That is not a voluntary payment. No, but there was a voluntary payment pursuant to state law. It was pursuant to state law and to the contract that was negotiated between the employee representative and the state. It was pursuant to state law, but it was not voluntary. They had no choice on whether they could pay. The money was taken automatically from their paycheck. They opposed the payment of the money, but there was nothing they could do about it. The employer converted the money automatically in the form of payroll deductions. That is just not a voluntary payment. Now, Your Honor is right. It was done pursuant to state law, but that's the very core of a Section 1983 violation under color of state law. I mean, before Monroe, the only way you could establish liability under Section 1983 was to show that it was done pursuant to a state statute. It's almost as though we're creating an upside down regime from what we had originally, where prior to Monroe, you had to show that you were doing something authorized by state law to hold the defendant liable. Now, it's almost as being viewed as a defense because you're acting in good faith. So, the core of a Section 1983 violation is that the allegedly unconstitutional conduct was explicitly authorized by a state statute. That's the very core of what Section 1983 is designed to remediate. But again, I disrespectfully disagree with the premise of Your Honor's question on the voluntariness point. This wasn't voluntary. And Janice says this wasn't voluntary. Janice calls it compelled speech. I think to characterize this as a voluntary payment just can't be squared not just Janice, but all the Supreme Court cases. Was her payment under protest? You can't pay under protest. It's taken out of your paycheck. This is not where you write the check to the IRS and say, I'm paying this under protest. Well, you could write to the state and say, I protest the deductibility of these payments. I suppose you could, but that would be futile. It would be futile. The reason you pay taxes under protest is because there later is a refund mechanism you can take advantage of to lodge your protest and to litigate your protest. There was no such avenue available here to our clients. The only thing they could protest was the calculation of the amount of agency fees. They believed that agency fees were too high. I understand that. I have one last question. Isn't the distinction here that we have private parties? If a private party, which under Wyatt said, we're not foreclosing the fact that private parties could have a good faith defense. Here it seems like maybe in the back of our minds, you're saying, well, the union has the money, so they should return it. To strike up the concept that any private party is not entitled to a good faith defense and it's going to have to repay money that it might have received when it was a state statute and binding Supreme Court precedent. I'm talking about the government giving money back here. We're talking about establishing a rule that goes totally contrary to Wyatt. What's your best case that the Supreme Court would, in fact, when faced with a private party situation such as this, would not do what it said might be inequality and fairness required in Wyatt? What's your best case for doing this vis-a-vis a private party? Judge Rendell, it's very rare for private parties to be sued under Section 1983, so we have very few cases where people are even bringing cases against private parties. It could be. You can't say, well, it doesn't really happen. It could happen. It doesn't. The best authority from the Supreme Court is Lugar, which says that you can be liable under Section 1983 as a private party, but I think the best case outside of the Supreme Court is the Benary case you mentioned in that brief. It's a district court opinion from Maryland about victim's restitution where there was a victim restitution award paid to a private party based on an unconstitutional criminal statute that was later declared invalid after the victim's restitution award had been paid, and the district court in Benary holds that the victim's restitution award that the private entity had received in good faith had to be returned. That's the best authority for the nation. I'm sorry. Yeah, that's the best authority for the idea that private parties can't keep money that was collected in good faith in reliance on a statute that's later declared unconstitutional, but as far as from the Supreme Court, there are hardly any cases at the Supreme Court ever involving private parties in Section 1983. Cases like this don't happen very often, so there's not much we can point to. There's not much the union can point to either in all candor, just because we don't have a lot of private party sections in 1983 litigation. Okay, thanks very much. We'll reserve your four minutes for rebuttal. I now understand that counsel for FLE SEIU Local 668, Mr. Pitts, you intend to speak for 10 minutes. Is that correct? That's correct, Your Honor. Good afternoon. Good afternoon. And may it please the Court, this is K.T. Pitts for SEIU Local 1668. Judge Rendell was right to focus on the fact that this is a Section 1983 lawsuit against private parties, not a lawsuit against government entities. In Lugar, the Supreme Court held for the first time that private parties that forego self-help and instead invoke a presumptively valid state-created process are potentially subject to Section 1983 liability if that presumptively valid state process is subsequently declared unconstitutional. The Lugar majority, in response to Justice Powell's dissent, recognized that this was a problem. And what it said was that they would not exclude private parties from 1993 altogether to address the problem, but instead suggested that there be recognition of an affirmative good faith defense. There's now a broad and unbroken consensus that private parties may assert that defense as this Court itself held in Jordan. And every Court to consider the issue has held, including four other circuit courts now, that the facts here, which involve public employee unions, good faith reliance on binding Supreme Court precedent in accepting and then expending agency fees for ongoing collective bargaining costs, present the strongest possible circumstances for application of the good faith defense. Let me push back a little bit on this, on two things. One, you say that there's unanimity among the circuit courts. I mean, yes and no. I mean, in Janus 2, the Seventh Circuit said good faith applies to damages, not equity claims. In Lee, the Sixth Circuit said, hey, you know, no one's challenging good faith. So the results have favored unions, but we don't have the same complement of arguments that we have here. But let me talk a little about this. There's some affirmative defenses that really have just incredibly broad applicability. Like, I'm thinking of, like, statute of limitations, right? In Section 983, it builds that in. They look to relevant state law for the most analogous time period, and they do that through reference to 1988a. You know, I guess settlement relief might be the same way. But there's other affirmative defenses that are very narrow. They apply only to certain causes of action. For instance, assumption of the risk in certain states may be an affirmative defense to tort claims, but not contract claims. The rest might be on and on. It strikes me that in order for you to really be able to assert a good faith defense, you have to show one of two things. You either have to show that good faith fits into the cover-the-waterfront sort of affirmative defense, like statute of limitations, or you have to show that good faith is a defense to the specific constitutional violation at play here, that of compelled speech. I don't see how good faith works if it doesn't meet one of those two. So can you talk to me about, are you electing for one or the other, or do you think it meets both? First, I do want to say that the decisions have been consistent across the circuits, and the same arguments have largely been pushed in the cases before the circuits. They actually involve the same counsel on this call, and the same arguments have been made, and the courts have reached the same decisions in considering those. But to answer your question, Jordan makes it clear that the good faith defense for private parties to Section 1983 liability is not specific to the claim at issue, but it is available at least to all Section 1983 claims that are brought against private parties on a Lugar-type theory, that is, private parties who are sued because they invoked a presumptively valid state process and sought the aid of state statutes. This is not so much a private party invoking, for instance in Jordan, the Confession of Judgment Clause, but rather this is the application of a state statute to a negotiated contract in which the state was a part of, and there is much more state action involved here. From the private party perspective, though, it is still the case that the Supreme Court had said that agency fees were constitutionally permissible. Pennsylvania passed a law allowing parties to negotiate over agency fees, and the union, which had an obligation to represent all of the members of its bargaining unit, regardless of collective bargaining representation and in reliance on state law and then-binding Supreme Court precedent, made the then entirely legal and reasonable decision to negotiate for agency fees. But the state agreed to that in the collective bargaining agreement. Right, and there is state action here for that reason. We haven't challenged the... My point is, isn't this scenario factually different and distinct from that in Jordan? It is factually different. I don't think it is distinct for purposes of the good faith defense, which protects the ability of private parties, whether it is private parties seeking to attach another entity's property or private parties seeking to fund an obligation that they have under state law to provide collective bargaining to all bargaining unit members to rely on state law and then-binding Supreme Court precedent in this case. And Jordan made it clear. Jordan was very clear about what it was deciding when it said that it agreed with the Fifth Circuit statement that private parties cannot be held liable under Section 1983, absent malice and a whether this good faith defense is tailored to a specific constitutional claim or is kind of what I'm calling the covering the waterfront type. I'm inferring that your answer is that it covers the waterfront based on Jordan. But there's a line in Jordan, and it says, quote, Finally, we note Section 1983 does not include any mens rea requirement in its text, but the Supreme Court has plainly read into it a state of mind requirement specific to the federal right underlying a Section 1983 claim, specific to the particular federal right underlying a Section 1983 claim. So it strikes me that if you want to have a good faith defense, there has to be some fit between that and the underlying deprivation of rights. And here, it's a compelled speech theory that Janice relied on. Do you have, so if the waterfront approach fails you, maybe it doesn't. But if it fails you, do you have any application of good faith to a compelled speech claim? Is good faith ever a defense to a claim of compelled speech? Good faith is a defense to the claim of compelled speech here, even if the court concludes that Jordan is not dispositive with respect to the general availability of a good faith defense in Lugar-type claims. And that's because if the court moves beyond thinking about Jordan itself to the other relevant considerations, which include both the common law background and the other principles that guide the construction of Section 1983, those principles mandate recognition of a good faith defense to the claim here. As, you know, in the first place, thinking about the common law, if we think about what is the claim most analogous to the claim that's being pursued here, as Judge Sutton and his colleagues on the Sixth Circuit just recently recognized in the Ogle case, it is abusive process. Abusive process is the most analogous claim, and that's because the claim here is that the union, through the process of bargaining for and receiving collective agency fees, put those fees towards an impermissible end under Janus, namely subsidizing the union's First Amendment expressive activity. Had they bargained for health insurance premiums or other costs, the process would be the same, but it would have been put towards a permissible end. And that is exactly the nature of an abusive process tort at common law, in which the tort arose where a otherwise permissible process was put towards an impermissible end. And as Wyatt itself recognized, the common law principle was extremely strong that parties, private parties who engaged in that sort of use of a state process were not liable unless there was a showing of malice and lack of probable cause. So Judge Sutton got it right in the Ogle opinion in realizing that looking to that common law background supports recognition of the good faith defense. And the cases cited in this court's letter earlier this week just further emphasize the common law basis for that principle. Would it be okay if I finish? Yeah, yeah, sure. Please finish. So in the first place, there are two sets of, as this court recognized, I think, in the opening argument, the core principle that's set forth in those cases is that plaintiffs could not undo prior transactions on the basis of a shared but mistaken understanding of law, which is really what that issue here. The private party cases are perhaps the most relevant because this is a case involving private parties rather than the government itself. And those cases make it clear that a prior transaction will not be undone on the basis of a subsequent judicial decision, making it clear that their understanding of the law at the time was wrong. But even the cases involving the government, which are analytically distinct because they don't involve private parties, do support a recognition here. The Burnett case out of the Supreme Court of Alabama is particularly illustrative of that principle. The court basically held that when the liquor dealer chose to go into business and face the threat of jail or fines if he did not procure the unconstitutional license and then paid that license fee, he was not entitled to its return. Here, the key point is that the plaintiffs all accepted and remained in public employment with the understanding that they would be required to pay these fees as a condition of employment. And the common law was crystal clear that that accept and remain in public employment was a voluntary decision. So even though the voluntary and involuntary distinction is not really relevant in the question between private parties as opposed to the government cases, even that distinction that the plaintiffs draw supports us in this case. Justice Holmes famously said about public employment at the common law that an individual may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. So from the common law's perspective, the fact that the plaintiffs accepted employment on those conditions established that they were making a voluntary decision. And the cases that this court has cited would support application of the good faith defense to this particular claim. All right. Let's hear from your... Thank you very much. Let's hear from counsel for the Pennsylvania State Education Association, Mr. Daylen. Mr. Daylen. Leon Daylen. I'm sorry. That's okay. Good afternoon. May it please the court. I wanted to just make a few points here. The first is that we do believe and we agree with the brief of our colleague in the Wencek case and the submission just made that this court's Jordan decision is broad enough and is written in terms broadly enough that it does control. But because of the questions here, I would like to show that it's correct independently of that and that it would apply and that the proper principles would cover a case like this. And I think the easiest way to conceive of that and to understand it is to go back to the enterprise in Wyatt itself and the concurring opinion by Justice Kennedy, which was joined by Justice Scalia, and the dissenting opinion of the Chief Justice with two others joining him, where they both said, and that's five votes, that there would be a common defense into Section 1983, just as the court in prior years and in prior jurisprudence, notwithstanding the absence of text in the statute on the point, first in the 50s identified an area of absolute immunity for certain kinds of claims, and then later in the 1960s identified an area of qualified immunity. And the interpretive exercise that the court engaged in was to ask the question whether the 1870 Congress would have understood conduct of the type of issue, stripping away the labels, to be conduct that could subject the defendant to liability without any fault of the common law, or whether instead only a party engaged in conduct with a culpable state of mind would be held liable. And if the answer was that the 1871 Congress would not have understood the particular conduct to give rise to liability without fault, then the plaintiff does not simply win a 1983 case, no matter the equities, by proving the constitutional violation, excuse me, the plaintiff doesn't secure damages simply by proving the violation. And this is a critical point. The plaintiff absolutely can secure prospective injunctive relief, which is why our colleagues on the other side, our friends on the other side of law, is in our view an element and a defense. That is not our position, that's a straw position. We fully acknowledge that a plaintiff who wants to bring a compelled speech case and seek prospective relief does not have to prove any state of mind. Where state of mind comes in is where the person wants to seek retrospective-looking monetary relief. Well, can I just chime in with a question that resembles a question that I asked your friend on the other side, which is, I mean, isn't there a temporal component to good faith? I mean, at one level it goes to the taking, but then it goes to the continued retention. And so I'd like to hear your thoughts on that, but also let me ask this question about the common law. If at common law there was a judgment entered against a defendant, and the defendant, maybe not on the best advice of counsel, paid the judgment right away, and then that judgment was reversed on appeal, wouldn't it, common law, that defendant have a right to get that money that they paid back? Or would the answer be, well, you shouldn't have paid it then, and we evaluate it only at the time you paid it? Let me take those two questions in order. On the first point, on the temporal effect, certainly it's correct and a helpful concession from our adversary that the receipt of the fees in good faith at the time is protected and can't give the money that was there to any kind of claim. As to the continued retention of them, the courts have looked at this carefully, and it's one of the features of this fact pattern that makes it an even stronger application for the good faith defense than some of the earlier generation of cases. And that is that in these cases it is undisputed that the unions didn't just collect the money and, as one court said, put it in a vault somewhere so that it could be returned without anyone having changed position in reliance or anyone being harmed. These monies were collected and expended, and if you look at how we framed the question presented, and the appellees did the same thing in Wencek, the question here is that the unions didn't just collect these fees, they spent them for the benefit of the very class that the plaintiffs belonged to. They were required under state law in their duty of fair representation, which is a fiduciary type duty, to take the money received and then spend it for the benefit of everyone, whether or not they were a member of the union. So everyone, whether or not they're a member of the union, got the benefit, of course, of wage increases, of grievance handling, and any number of services. Now it's true that in Janus the court said that the services rendered. And if you look at this through a common law lens, and we cited provisions of the Restatement on Restitution in our briefs, if you look at it through even the preferred lens of, you know, Mr. Mitchell in this case, look through that lens. The common law had all sorts of issues, but the mistake of law came to light. And we cite, you know, various provisions of multiple restatements on this. So at common law, the party who changed their position and reliance on a good faith mistake of law would not have to return the money taken. If perhaps they had, as I said before, put it in a vault and had not changed their position and reliance, there'd be a different, you know, depending on, you know, the case in the court, there'd be a dispute as to what's happening in these union cases. And the courts, the four circuits that have decided this, at least some of those decisions, if not all of them, make this very point. So, you know, so going back to that broader framework, starting from first principles, would an 1870 Congress, A, have understood that a private party or that any party changing its position and reliance would have a defense as long as they another, would a private party who did not resort, and it's interesting that my colleague in explaining conversion did give an archetypal conversion case. That's a person resorting to self-help to, you know, take a wallet off the podium or to, you know, abscond with another's property. What was not true, what's not true of this case and what was not true at common law was that a party who, without resorting to self-help, but who instead invoked process, a government statute or process to secure property, was protected and wasn't strictly liable to the other side. So, you know, that's a crucial point. And that is why all four courts have said that the closest analogy is abuse of process. Because the central, you know, when you look at it, the correct inquiry is that, you know, when a private party, you know, leaves the government out of the equation and resorts to self-help, there's no constitutional wrong at all because there's no state action. Once there is state action, it's because under Lugar, the private party didn't resort to self-help but followed and did what every private citizen is supposed to do. You know, normally a private citizen is protected by the constitution and not regulated. So when a private party follows the process, there is a defense. And I'll just make one last point, which I think is really goes to the root of it, which is that Justice Powell in his dissent in Lugar flagged this problem as a problem in holding that Section 1983 reaches private parties. And the majority in Lugar did not say, well, Justice Powell, you know, he's barking up the wrong tree, that's the way the cookie crumbles. They specifically addressed it in footnote 23 and they said, there is a problem here, but it should be addressed through a good faith defense. So I think, yeah. Counselor, if you believe that Jordan does control here, would we have to remand for determination of subjective good faith? I don't believe so because the plaintiffs have not alleged that the unions here acted without good subjective good faith. And if you look at the way that the good faith defense kind of formed out of Justice Kennedy's concurrence, which was then adopted in both the Fifth Circuit remand case in White and this conduct, that is sufficient. In Jordan, good faith came into play because the court wasn't prepared to say there had been a previous case, unlike where we are here, there had been a previous case that had called into doubt the legality of the Pennsylvania process. So the law firm's good faith became very relevant in Jordan, but it's not relevant here. That can be decided as a matter of law. Okay. Thank you. Are there any questions from the panel? Not here. Thank you. All right. Mr. Mitchell, I understand you have four minutes for rebuttal. Yes. Thank you, Your Honor. The Diamond plaintiffs are not disagreeing about the existence of a good faith defense. We're disagreeing with the unions about its scope. Judge Phipps made the point again about these temporal issues regarding when the good faith defense is considered. And that fits hand-in-glove with the theory we're offering with respect to restitution. The union may have acted in good faith when they initially collected the money before Janus. But when a plaintiff is bringing a restitutionary claim asking for the return of property or the return of money that was taken in the admitted good faith but in violation of the Constitution, the question becomes whether can the union assert good faith to defend its retention of the money? Can the union assert a good faith defense now post-Janus to argue that it should be allowed to keep the funds that it took? But isn't there an argument, Counselor, they're not really retaining anything. They spent the money. It really is damages. You want to get the money back, but they're not retaining it. They've actually spent it. So isn't it really a claim that you want damages from them? Judge Rendell, if one were to analogize this to a conversion action, and Wyatt v. Cole, the case found in the Fifth Circuit, which recognized a good faith defense, when the defendants had seized cattle and tractors in good faith reliance on a republican statute that was later declared unconstitutional, the defendants had to return the cattle and the tractors even though they had a good faith defense. And to go to Your Honor's hypothetical, let's suppose the defendants in Wyatt v. Cole had sold the cattle and the tractors or had used it or destroyed it. They would still have to return the fair market value. Well, but that's a damage claim. That's a damage claim. Go ahead, Mr. Judge. To answer Judge Rendell's question, it would be a restitutionary claim, whether we call it damages or equity, but they wouldn't be allowed to keep the policy. Now, I know I'm talking about a case that doesn't exist. It's a hypothetical. But nobody thinks in Wyatt v. Cole that the defendants should have been allowed to keep the cattle and the tractors. Even the union has an option. Well, I mean, at one level, I mean, I believe it's the Diamond Plaintiffs, who you represent, that kind of have two subclasses. You've got this class of people who actually paid money to the union, and then the religious objectors who said, we don't want to pay the money to the union. And so let's just say you've got a restitution beyond constructive trust approach. Money can be spent, but we don't have a constructive trust, or we have a great constructive trust in any money that they've got. But that doesn't help you with the second class of people who never paid money to the union. They go to the union and just force them to divert the money, but they never paid the money to the union. So, I mean, maybe under your theories, they would have a claim against the charities that they donated, that they directed the money to. But how does that second class ever have a restitutionary claim against the union? Now, maybe they have a damages claim, you know, assuming the defense doesn't apply. But restitutionary, what is the basis for their restitutionary claim? Yes. So we would need more factual development to find out exactly how this money was transferred from our client to the charities through the union. In other words, was it paid to the union first, and then did the union remit the money to the charity? Was the money remitted directly from the paycheck to the charity? We haven't gotten to this point as a case where we're out on 12 sex. But Your Honor is certainly right. In either event, you couldn't really get the money back from the union. I mean, you're really talking equity here. Half of the money ultimately went to a charity. You can't get it back from the union, can you? May I answer? I hear my time's expiring. Yeah. Yeah, you can answer. I mean, on a restitution theory, you can't get it back on a restitution theory. You might be able to get it back, Judge Rendell. And, again, we would need more factual development. Judge, this is certainly right to point out the questions will be more nuanced with respect to the religious objectors than it will be with respect to the agency payers. But if I can answer Judge Rendell's question. If the union took the money first and then remitted it to a charity, we believe we can recover that money from the union. It would be analogous to someone who seizes the cattle or the tractor and glides against coal and then decides to give the cattle and tractor away to their favorite charity. Well, but the direction came from your clients. And the direction in the other hypothetical said, oh, meanwhile, take this cattle and then give it to charity. It did come from our clients, Your Honor, but they were still compelled by law with the union who agreed in the collective bargaining with the state to put our plaintiffs to the choice of either pay this money to the union or direct the union to remit this money to the charity. Again, I think we would need more factual development on remand to find out. I mean, factual development, I mean, you've got to come up with a plausible claim to survive a motion to dismiss, and it strikes me that really your first redress is against those, you know, on the same restitutionary theory, it would be against those other entities that were the ultimate recipients of the money because they apparently, you know, had no right to that. And they aren't defendants. That's right. No, we have not named the charities as defendants. That's right. But for the union to prevail on a 12B6 motion to dismiss, they have to show there's no set of facts. No, no. That's the Conley v. Gibson standard. That's the Conley v. Gibson standard. No, but even post-Quambley. No plausible. No plausible. That's right. Right. Is there no plausible set of facts under which we can't prove our case before discovery? I mean, we're not supposed to allege in the complaint exactly what happened when we've had no opportunity to figure out what the actual situation was with how this money got from the paychecks of our clients ultimately to the charity through the union because of the collective bargaining agreement the union had negotiated. All that needs to be worked out somehow after factual development. But your Honor is definitely right. It is a more nuanced question with respect to the religious objectives. And we would need to find out somehow what happened with respect to the way the money was transferred out of our clients' paychecks and to the charity. But at this point in the litigation on 12b-6, when there's been no opportunity for factual development, we're not required to prove our case in the complaint. And all we have to do is pledge that money was taken. And then what the scope of the defense is is for this court to decide and be applied on remand. All right. Are there any more questions from the panel? No. No. All right. Thank you very much, counsel. I'll take this matter under advisory.